**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JASON R. KNIPP, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CASE NO.  1:21-cv-403 |
| | ) |
| MIDDLETOWN PROPERTY GROUP LLC, | ) |
| | ) |
| | ) |
| Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND REQUEST FOR TRIAL BY JURY***

*I.  INTRODUCTION*

Plaintiff Jason R. Knipp ("Knipp") brings this action against under the Fair Labor Standards Act ("FLSA") and the Indiana Wage Claims Statute, I.C. 22-2-9, against his former employer, Defendant Middletown Property Group LLC ("Middletown") to address wage and hour and overtime violations committed by Middletown against Knipp along with Knipp's claim for FLSA retaliatory discharge against Middletown.

*II.  FACTUAL ALLEGATIONS*

1. Knipp is a resident of the State of Indiana and is currently domiciled in Fairmount, Indiana.

2. On its website, Middletown describes itself as a "real estate firm located in Muncie, Indiana that focuses on acquiring, stabilizing and managing real estate."  It claims to have "a portfolio of 900+ residential units," "commercial real estate" and says it "provides third party management for over $50 million worth of real estate."

3. On or about December 7, 2020, Middletown hired Knipp to work for it as a

Maintenance Coordinator.  Middletown promised Knipp wages of $18.00 per hour.  Knipp left his employment as a Maintenance Supervisor with the Elon Property Group to take the job with Middletown.

    4.     During his brief period of employment with Middletown, Knipp was paid his wages on an hourly basis and treated as a non-exempt employee.

    5.     Middletown has intentionally, knowingly, with reckless disregard and systematically violated Knipp's right to be paid his full earned wages and earned overtime.

    6.     Middletown committed wage and hour and overtime violations by failing to pay Knipp for all of his hours of work each week.  Middletown promised to pay Knipp his wages at an hourly rate of pay, but Middletown was substantially underpaying wages to Knipp by failing to pay on a continuous workday basis.  Specifically, Middletown was not paying Knipp from the moment of his first principal work activities - typically the 8:00 a.m. morning meeting at Middletown's office - through the last principal work activity of the day - typically the return of the company truck and clock out at the end of the workday at the Middletown office warehouse.

    7.     All of the time Knipp spent working for Middletown, from first to last principal activity of each day, is work time and must be compensated under the law.

    8.     Middletown intentionally and knowingly violated Knipp's right to earned wages and overtime through Middletown's conscious and deliberate decision not to pay Knipp for all of his work time.

    9.     Knipp was reporting his hours of work to Middletown in a timekeeping system called "Appfolio."  This "Appfolio" program also tracked time Knipp spent on each particular maintenance job during his work day.  "Appfolio" was also supposed to track whether or not

Knipp was able to take a bona fide meal break for lunch. Additionally, Knipp would turn a paper time sheet in to Middletown's office each week.

10. Shortly after he began his employment, Knipp became aware that his wages were being underpaid and aware the Middletown was not paying him for all of his hours and paying him overtime rates for his overtime hours. Middletown would not provide Knipp any time of itemized pay stub or provide copies of time sheets when Knipp requested. Instead, Middletown would simply direct deposit Knipp's wages into his bank account. Knipp made repeated requests for pay stubs and time sheets to Middletown's office manager, a woman named Audrea, and to Middletown's CEO, a man named Matt Abner. Knipp also made complaints to his immediate supervisor, Rob Croucher, about the fact that Knipp was not being paid for all of his hours of work and was not being paid his overtime.

11. Moreover, during his brief employment with Middletown, Knipp made multiple direct complaints about Middletown's failure to pay him for all hours of work, failure to pay him overtime and its refusal to provide him with pay stubs. Knipp made multiple complaints about his wages to CEO Matt Abner, to Office Manager Audrea and to his immediate supervisor Rob Croucher. In fact, to Office Manager Audrea, Knipp stated that Middletown's refusal to give pay information to him was illegal. Very shortly after that comment, Middletown retaliated against Knipp and fired him.

12. Knipp will need his paper time records, his Appfolio records and pay stubs, but he will be able to show that he worked in excess of forty (40) hours in all of the full, non-holiday weeks he worked for Middletown. Examples of weeks Knipp can state with certainty that he worked more than forty (40) hours and was owed overtime, but not paid overtime, were 1) the

week Knipp had to drive for work to Woodburn, Ohio, 2) the week Knipp had to drive for work to LaGrange, Indiana, and 3) in Knipp's last full week of work, Matt Abner, Office Manager Audrea, and Middletown's two owners conducted a three hour training session after regular work hours (from 5:30 p.m. to approx. 8:30 p.m.) and Knipp was not paid for the overtime hours. In fact, this after-hour training, which Knipp believes occurred on January 20, 2021, Knipp specifically asked Office Manager Audrea if he was going to be paid for the hours spent in the training session.  The training was centered on use of the "Appfolio."  Knipp went on to state to Audrea that the hours were supposed to be overtime and supposed to be paid at time and one-half.  Knipp continued by asking Audrea again if he and his coworkers were going to be paid for the training and stated "we have been shorted hours in earlier weeks."  Audrea refused to respond to Knipp.

13. As described above, during most of the seven weeks Knipp worked for Middletown, Knipp worked in excess of forty hours and was owed additional overtime compensation based upon Middletown's unlawful failure to pay Knipp for all of his compensable work hours.

14. Knipp is expressly alleging that Middletown acted in bad faith in violating Knipp's rights under the FLSA and the Indiana Wage Claims Statute, and that Middletown certainly did not seek to comply with the Indiana Wage Claims Statute in good faith.

15. By way of this Complaint, Knipp seeks for himself all unpaid wages, all unpaid overtime, all available statutory damages, including all liquidated damages, and payment of his reasonable attorneys' fees, costs and expenses.

16. Additionally, as mentioned above, Middletown retaliated against Knipp and

terminated Knipp's employment because of Knipp's direct and multiple complaints about his unpaid overtime made to the CEO, Office Manager and his supervisor.  In fact, Middletown fired Knipp on January 26, 2021, just a few days after Knipp's direct complaints about his unpaid overtime and unpaid training hours made to Office Manager Audrea.

17.     Middletown's decision to fire Knipp is very obviously an act taken to retaliate against Knipp for complaining about unpaid overtime and the illegal wage practices of the company.  During the short time Knipp worked for Middletown, Knipp did good work and met Middletown's reasonable expectations.  Middletown had not warned Knipp his job was in any jeopardy or given Knipp any criticism about his work.  But for the fact that he engaged in activity protected by the FLSA, Middletown would not have fired Knipp.

18.     Knipp has been significantly harmed by Middletown's act of retaliation against him and its intentional violation of the FLSA's anti-retaliation provision.  He is seeking all lost wages and benefits, all available compensatory and punitive damages and payment of his attorney's fees and costs.

### III.  JURISDICTION AND VENUE

19.     This Court has jurisdiction over Knipp's FLSA claims under 28 USC § 1331 as those FLSA claims raise questions of federal law.  See 29 USC § 201 et seq.   The Court has supplemental jurisdiction over Knipp's Indiana law claims, which have a common basis in fact with his FLSA claims.

20.     This Court is the appropriate venue for this cause of action as Knipp worked for Middletown in Muncie, Delaware County, Indiana.  28 USC § 1391.

### IV.  ADMINISTRATIVE PROCEDURES

21. Because he was terminated, Knipp reported Middletown's failure to pay him all of his wages to the Indiana Department of Labor, Wage and Hour Division. Knipp has obtained permission to pursue this matter privately, with his attorney serving as the Indiana Attorney General's "designee." That permission was issued by the Office of the Indiana Attorney General by letter dated February 11, 2021. This permission allows Knipp to pursue his wage claim under I.C. 22-2-9-2 and I.C. 22-2-9-4, utilizing the remedial provisions of I.C. 22-2-5-2.

### V. STATEMENT OF CLAIMS

#### A. *Fair Labor Standards Act Claims for Overtime Violations*

22. Knipp incorporates herein by reference paragraphs 1 through 21 above.

23. Middletown is an "enterprise" as that term is defined by the FLSA, and Middletown is covered by the overtime and minimum wage provisions of the FLSA. Middletown is an "employer," as that term is defined by the FLSA. Finally, Middletown is a "person" as that term is defined by the FLSA.

24. Middletown violated Knipp's right to be properly paid overtime wages in a manner required by the FLSA. Middletown committed overtime violations by failing to pay Knipp for all overtime hours of work, particularly as Middletown significantly underpaid overtime wages based upon its unlawful failure to pay for all work hours from a first principal activity to a last principal activity each work day.

25. Middletown repeatedly violated the FLSA's overtime provisions by not paying Knipp at the required overtime compensation rate for all hours worked over 40 in a work week.

26. Middletown's failure to comply with the FLSA's provisions regarding overtime compensation was willful and without justification, and subjects Middletown to a three year

statute of limitations.

27. Knipp seeks all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which he may be entitled for Middletown's violations of his rights under the Fair Labor Standards Act.

### B. Indiana Wage Claims Statute Claims

28. Knipp incorporates herein by reference paragraphs 1 through 27 above.

29. By way of this Complaint, Knipp is seeking all available damages, including unpaid wages, damages for late payment of wages, and all available liquidated and/or treble damages, plus any and all attorney's fees, costs, and expenses, and any other damage to which he may be entitled pursuant to Indiana Law.  This includes payment for all hours of work that were unpaid.  Pursuant to the Indiana Wage Claims Statute, which incorporates I.C. 22-2-5-2, Knipp is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all of her attorney's fees, costs and expenses.

30. Middletown's failure to pay Knipp his wages 1) on time and 2) in full were acts of bad faith.  Knipp is certainly entitled to payment of all of his earned wages, liquidated damages for the late paid wages, and liquidated damages for the unpaid wages.  Because he was involuntarily terminated from employment, Knipp's right to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-2-5-2.

### C. Retaliation Claim Under the Fair Labor Standards Act

31. Knipp incorporates herein by reference paragraphs 1 through 30 above.

32. Middletown is an "enterprise" as that term is defined by the FLSA, and Middletown is covered by the overtime and minimum wage provisions of the FLSA. Middletown is an "employer," as that term is defined by the FLSA. Finally, Middletown is a "person" as that term is defined by the FLSA.

33. Middletown retaliated against Knipp and terminated Knipp's employment because he complained about FLSA overtime violations to his Middletown managers. Such retaliatory action violates the FLSA's anti-retaliation provision. 29 USC § 215(a)(3). Middletown fired Knipp in retaliation for his protected activity under the FLSA. Middletown had no legitimate or non-retaliatory reason for terminating Knipp's employment.

34. Knipp has been harmed and will continue to suffer significant harm as a result of Middletown's illegal acts of retaliation against him. Knipp is seeking from Middletown all available damages, including, but not limited to, all lost wages and benefits, all available liquidated, compensatory and/or punitive damages, payment of his attorney's fees, costs and expenses, plus any and all other relief which will make him whole.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Knipp respectfully requests that the Court enter judgment against Middletown and issue all available relief to him, including, but not limited to, the following:

1.  All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2.  All damages available under the Indiana Wage Claims Statute, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's

fees, costs and expenses;

3. All damages available under the FLSA's anti-retaliation provision, 29 USC § 215(a)(3), including all lost wages and benefits, all liquidated, compensatory and punitive damages, plus payment of his attorney's fees, costs and expenses.

4. All unpaid and underpaid wages;

5. All reasonable attorney's fees and expenses;

6. Costs;

7. Prejudgment interest, if available; and

8. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com

### *REQUEST FOR TRIAL BY JURY*

Comes now Plaintiff Jason R. Knipp, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.

                    Attorney No. 18038-84
                    100 Cherry Street
                    Terre Haute, IN 47807
                    (812) 232-9691
                    (812) 234-2881 Facsimile
                    <u>kondras@hkmlawfirm.com</u>